■ RICHARD GOTTLIEB, Respondent-Appellant, v 180 HARTSDALE ASSOCIATES et al., Appellants-Respondents.—In an action to recover damages for breach of contract, the defendants appeal from so much of an order and judgment (one paper) of the Supreme Court, Westchester County (Marbach, J.), dated October 24, 1984, as denied that branch of their motion for summary judgment as was to dismiss the second cause of action asserted in the complaint, and upon the plaintiff's cross motion for summary judgment, granted him the status of a tenant purchaser pursuant to an offering plan for a cooperative apartment and awarded him the principal sum of $5,839.50 ($2,489.50 as a repair and electrical allowance and $3,350 as a financing allowance), and the plaintiff cross-appeals from so much of the same order and judgment as limited his award to the aforesaid amount, denied that branch of his cross motion which was for summary judgment on his first cause of action for a relocation or termination allowance as a nonpurchasing tenant, and granted that branch of the defendants' motion which was for summary judgment as to that cause of action. The appeal brings up for review an order of the same court, entered July 3, 1984, which determined the respective motions of the parties for summary judgment and upon which the order and judgment was entered.

Order and judgment reversed, insofar as appealed from by the defendants, and their motion for summary judgment dismissing the complaint granted in its entirety.

Order and judgment affirmed, insofar as appealed from by the plaintiff.

Order entered July 3, 1984 modified accordingly.

The defendants are awarded one bill of costs.

At the time the subject offering plan to convert a building to cooperative ownership was first presented to the tenants in December 1981, the plaintiff and his family occupied apartment 5H in the defendants' building. Pursuant to the terms of the offering plan, the plaintiff could elect to terminate his occupancy of apartment 5H in exchange for a relocation allowance. On January 14, 1982, the plaintiff entered into a

lease termination agreement with the defendant 180 Hartsdale Associates whereby he agreed to surrender his lease and its unexpired term and to vacate his apartment within 90 days of the effective date of the plan in consideration of payment to him of the sum of $8,975. The aforesaid sum was computed at the rate of $25 for each share allocated to the subject apartment.

After executing the termination agreement, however, the plaintiff changed his mind and elected instead to purchase another apartment in the defendants' building. On February 26, 1982, he executed a subscription agreement to purchase the stock attributable to apartment 5F at the insider price, plus a $4,000 reimbursement to the owner for rehabilitation costs. The plaintiff's purchase price was approximately $20,-000 less than the purchase price of the apartment for a nontenant purchaser.

By a letter dated March 3, 1982, the defendant East Island Management Co. returned to the plaintiff a copy of the subscription agreement, duly executed, and informed him that the lease termination agreement was no longer applicable in view of his decision to purchase apartment 5F. A copy of said letter was also forwarded to the plaintiff's attorney. Notwithstanding said communication, neither the plaintiff nor his attorney contacted the defendants regarding the cancellation of the lease termination agreement.

On April 21, 1982, the plaintiff vacated apartment 5H and moved to apartment 5F and thereafter completed his purchase of the shares of stock attributable to the latter apartment. In September 1982 the plaintiff demanded that the defendant Soling-Patent Company make payment of the relocation allowance pursuant to the terms of the lease termination agreement. The plaintiff thereafter commenced this action for breach of contract against the named defendants asserting claims for the relocation allowance and for damages incurred as a consequence of the defendants' alleged breach. The defendants subsequently moved for summary judgment dismissing the complaint, while the plaintiff cross-moved for summary judgment on his behalf, resulting in the order and judgment appealed from.

It is a fundamental tenet of law that the words in a contract should be given their plain and ordinary meaning, unless the context mandates a different interpretation (*Laba v Carey*, 29 NY2d 302, 308, *rearg denied* 30 NY2d 694; *Allied Chem. Corp. v Alpha Portland Indus.*, 58 AD2d 975). Pursuant to the terms of the offering plan, an original tenant-purchaser is one who

elected to purchase "the Shares allocated to his or her apartment occupied on the date of presentation of the Plan". It is undisputed that on this date, the plaintiff occupied apartment 5H and, pursuant to the terms of the offering plan, he could only qualify as an original tenant-purchaser if he had elected to purchase apartment 5H. The plaintiff did not do so and is, therefore, not an original tenant-purchaser. In view of the plain and unambiguous language in the offering plan, Special Term erred when it considered the subsequent "course of dealings" of the parties and held that the words in the offering plan did not comport with their plain meaning (see, *Allied Chem. Corp. v Alpha Portland Indus., supra*). Accordingly, Special Term erred in concluding that the plaintiff was an original tenant-purchaser with regard to apartment 5F and in according him the benefits to which only tenant-purchasers under the offering plan were entitled.

Special Term was correct, however, in determining that the plaintiff was not entitled to the plan's relocation allowance. Pursuant to the offering plan, an otherwise qualified tenant will not be entitled to a relocation allowance until the tenant's possession of all apartments in the building are surrendered to the sponsor. As set forth at page 44 of the plan: "If any Qualified Tenant shall lease more than one apartment (a) the Relocation Allowance shall be payable only for the shares allocated to the apartment occupied by the Qualified Tenant as his or her primary residence and (b) no Relocation Allowance shall be payable unless and until possession of all other apartments leased to the Qualified Tenant (or other family members) are surrendered to Sponsor".

In the instant case, both the subscription agreement and the interim lease for apartment 5F were executed before the plaintiff vacated apartment 5H on April 21, 1982. Inasmuch as the plaintiff was unable to demonstrate that his possession of all other apartments was surrendered to the sponsors, he was not entitled to the relocation allowance. Moreover, the plaintiff's failure to object when the defendants informed him by letter dated March 3, 1982 that the lease termination agreement of January 1982 was no longer in effect, reasonably entitled the defendants to rely upon the fact that said agreement had been superseded by the plaintiff's execution of a subscription agreement with regard to apartment 5F. Mangano, J. P., Thompson, Brown and Weinstein, JJ., concur.